**Sarah F. EVANS, Plaintiff,**

v.

**MEADOW STEEL PRODUCTS, INC. and Koppers Company, Inc., Defendants.**

**Civ. A. No. C83–1266A.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 1, 1984.

Cary D. Langston, J. Phillip Sauerbrun, Decatur, Ga., for plaintiff.

Charles A. Edwards, Greene, Buckley, Derieux & Jones, Atlanta, Ga., for defendants.

**1392**

## ORDER

ROBERT H. HALL, District Judge.

This Title VII action is presently before the court on defendants' motion to reconsider, defendants' motion for summary judgment, and defendants' motion for a bifurcated trial. Federal jurisdiction is pursuant to 42 U.S.C. § 2000e–5(f)(3).

## FACTS

Plaintiff, a black female, began work with Meadow Steel Products, Inc. ("Medco") on February 2, 1981. Medco manufactures concrete accessory products. Because the products and skills necessary to manufacture them are unique there is no pool of qualified trained laborers in metropolitan Atlanta. For this reason all newly hired employees at Medco are regarded as unskilled and are trained on the job; each undergoes an initial ninety day probationary period.

On February 2, 1981, plaintiff was hired to work in Medco's Decatur, Georgia plant and commenced her probationary period. Plaintiff was rotated through different jobs within the plant, her final assignment was as an attendant on the plastic cure oven, a piece of equipment used to apply plastic coating to fabricated steel products. Operation of the oven is continuous, with the "feeder" at the head end responsible for setting the pace on the machine and maintaining quality control. At all relevant times Rufus Williams was the "feeder" at the head end of this oven.

Assignment to the oven was not popular and plaintiff alleges that at one time she requested a transfer, contending that she felt ill from the fumes and heat. Medco denies that plaintiff ever claimed to be sick. A white female was transferred from the oven to another location in the plant for medical reasons.

Certain safety regulations were in effect at Medco, specifically, employees were required to wear safety glasses. Defendant contends that plaintiff was reprimanded on several occasions for failure to wear safety glasses.

Because the operation of the plastic cure oven is continuous the crew assigned to it must take staggered breaks. Williams was to break for lunch when the noon whistle blew, Evans was to wait until the product had completely passed her work station before taking her lunch break. Defendant alleges that on February 24, 1981, plaintiff left her station when the noon whistle blew, rather than waiting as required.[1] Defendant alleges that when requested to return to her position plaintiff refused. On that afternoon plaintiff was discharged. Defendant contends that the reasons for firing plaintiff were that she was unwilling to wear safety glasses, that she left her position and refused to return to it and, additionally, that Williams, her leadman, had criticized her job performance.

On March 2, 1981, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The charge listed "Meadow Steel Products, Inc." as the employer in question. Upon request, plaintiff received her necessary "Right to Sue" letter from the EEOC, the letter being dated March 22, 1983. Within the mandatory ninety day period plaintiff filed this action in federal district court, naming Medco and its parent company, Koppers Company Inc. ("Koppers") as defendants. Plaintiff brought her action pursuant to the following statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, ("Title VII"); 42 U.S.C. § 1981; 42 U.S.C. § 1982; and 42 U.S.C. § 1983. By order dated October 12, 1983, this court dismissed all but the Title VII claim. *Evans v. Meadow Steel Products, Inc.*, 572 F.Supp. 250 (N.D.Ga.1983). In that same decision this court also held that Koppers, while not named in the EEOC charge filed by plaintiff, should not be dismissed as a party to this action. *Id.* at 254–55.

---

1. Plaintiff admits that "on one occasion" she "inadvertently left her position ... when the noon whistle blew instead of remaining till the product had reached her work station." (Plaintiff's Statement of Material Facts, ¶ 7). Plaintiff does not state that the date was February 24, 1981.

Defendants have now moved as follows: (1) to have this court reconsider its earlier decision regarding the dismissal of Koppers; (2) for summary judgment; and (3) barring summary judgment, for a bifurcated trial. The court will consider these motions separately and will disclose further facts as necessary for the discussion of the motions.

## DISCUSSION

### I. Motion to Reconsider

In their original Motion to Dismiss defendants sought to dismiss plaintiff's claim against Koppers on the ground that this company was not indicated on plaintiff's Charge of Discrimination filed with the EEOC. This court noted that the normal rule in such situation is that "only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1122 (5th Cir.1981). The court refused to apply this rule, however, because plaintiff's Notice of Right to Sue indicated that Koppers received a carbon copy of that notice. This, the court felt, "seemed to indicate that at some point the EEOC investigated Koppers and it seems likely that Koppers was made aware of the charges." *Evans,* 250 F.Supp. at 255. The court held that if this was true then the policies behind the rule (giving the EEOC a chance to investigate and attempt conciliation · and giving defendants notice of charges) had been fulfilled and there was no need to resort to the rule.

Defendants are now asking this court to reconsider its earlier holding. Defendant Koppers contends that it did appear at plaintiff's EEOC hearing but only in a representative capacity for Medco. According to Koppers, this is why it received a copy of plaintiff's Right to Sue notice. In support of this contention defendants have submitted the affidavit of Mary Kate Scheib, Koppers' EEO Administrator.

 Based on this new evidence presented the court will reconsider its earlier order regarding the dismissal of Koppers as a party to the action. The court refused to

dismiss Koppers earlier because it felt that the receipt of the carbon copy raised an issue as to whether Koppers had notice of a charge against it. The new evidence explains why Koppers received the copy— Koppers was Medco's representative; such receipt does not indicate, therefore, that Koppers was ever aware of charges against it. For this reason the court now GRANTS defendants' motion to dismiss Koppers.

### II. Motion for Summary Judgment

The law establishing the various burdens of proof borne by the parties to a so-called "disparate treatment" action such as the one at bar was set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In that case, the Court held that plaintiff bears the initial burden of establishing a ·prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. If plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Once the employer has articulated such a reason, the burden then shifts to plaintiff to demonstrate that the reason proffered is a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. The ultimate burden of persuasion remains with plaintiff throughout these various shifts in the burden of going forward. These principles have been reiterated by the Court in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); and *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

Defendant[2] argues that in the instant case plaintiff cannot sustain the necessary burdens as set out in the above-cited cases. In deciding the case this court will consider each step in the three part analysis separately.

---

**2.** Having dismissed Koppers the court will now refer to the movant in the singular form.

### A. *Plaintiff's Prima Facie Case*

An employee typically presents a prima facie case of discriminatory discharge under Title VII by showing the following factors: (1) that s/he is a member of a protected minority; (2) that s/he was qualified for the job from which s/he was discharged; (3) that s/he was discharged; and (4) that after s/he was discharged the employer filled the position with a non-minority individual. *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir.1979).

In this case there is no doubt that plaintiff, a black female, is a member of a protected group and that she was discharged. It is in regard to factors 2 and 4 that defendant argues for summary judgment. According to defendant, plaintiff was not qualified for work on the oven and even if she was qualified she was replaced by a black.

Regarding plaintiff's qualifications, defendant contends that every newly hired employee at Medco is unqualified and must undergo training and, therefore, defendant asserts that plaintiff was unqualified to work on the oven. The court is not persuaded by this argument. If defendant's theory was correct Medco would be free to discharge any newly hired employee for any reason, including a prohibited one, and rest on this defense. However, defendant also argues that the entire reason plaintiff was fired was because she was not performing well—she would not wear safety goggles, she left her position before it was her time to leave and her leadman complained of her performance. Plaintiff, however, contends that she was qualified and was performing satisfactorily. In support of this assertion she submits the affidavit of her leadman, Rufus Williams. In para-

graph 11 Williams swears that "Sarah F. Evans' performance on the cooker oven process was comparable to that of other employees and I was not dissatisfied at any time with her work on the cooker oven process for which I was the leadman."

On a motion for summary judgment the movant (herein defendant) bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. Whether plaintiff was qualified is certainly a material issue in this case. Because the evidence presented must be construed in favor of the party opposing the motion, and that party must receive the benefit of all favorable inferences that can be drawn from her evidence, this court cannot grant summary judgment for defendant on the basis of this factor.

Defendant also contends that summary judgment should be granted because plaintiff was replaced by another black. According to defendant the next employee hired by Medco was a black male. Medco states that its "Exhibit M" is illustrative of this fact. Upon examination of "Exhibit M" it appears to the court that the opposite is true—that the next employee hired was white.[3]

Having found that there is evidence to support all four requirements of a prima facie case the court denies defendant's motion for summary judgment on this issue.

### B. *Defendant's Burden*

Defendant next argues that even if plaintiff can establish a prima facie case of racial discrimination, defendant has articulated legitimate, non-discriminatory reasons for her discharge. Certainly it is true

---

**3.** "Exhibit M" is a copy of two interrogatories (# 18 and # 21) served on defendant by plaintiff, and the defendant's answers thereto. Pursuant to one of these, Question # 18, defendant provided a list entitled "Probation Terminations;" this list sets out hiring and termination dates for employees. According to this list the first person hired after February 24, 1981, (plaintiff's termination date) was an individual named Meritt, hired on April 10, 1981. Mr/Ms Meritt's race is listed as "C", presumably short for "Caucasian."

The other interrogatory included in "Exhibit M" is # 21. In response to this question defendant listed all persons hired since plaintiff's termination who worked on a probationary status in the same capacity as plaintiff. The first name on this list is A.J. Keeler, hired on March 4, 1981. This person's race is indicated as "W", presumably "White."

Whichever list is relied upon, it appears that the first person hired by Medco after plaintiff's discharge was a white individual.

that Medco has articulated such. As stated earlier, defendant contends that plaintiff's discharge was due to unsatisfactory work performance and violation of company rules (including safety rules). At this point plaintiff has the opportunity to prove that defendant's articulated reasons are merely a pretext for racial discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

### III. Pretext

Defendant argues that, as a matter of law, plaintiff cannot demonstrate that defendant's articulated reasons are a pretext. This court disagrees. Plaintiff has introduced evidence from which the trier of fact could find that defendant's articulated reasons are a pretext for a racially discriminatory reason.

In *McDonnell Douglas, supra,* the Supreme Court enumerated several possible types of evidence which can be relevant to a showing of pretext. One type of relevant evidence is an employer's general policy and practice with respect to minority employment. *Id.,* 411 U.S. at 804–805, 93 S.Ct. at 1825–1826. In this regard plaintiff has introduced evidence that while Medco has more white employees than black, with a very few exceptions the employees assigned to the cooker oven (the most physically demanding job in the plant) were black. (Williams affidavit, p. 2–3). There is also evidence that one white woman, Terri Rogers, who worked on the oven was transferred when she complained of feeling ill. (Schmitz depo., p. 22).[4] According to plaintiff she also requested a transfer because the oven made her feel ill but her request was denied. (Plaintiff's Affidavit, p. 3).

In addition, while plaintiff's discharge was allegedly due to poor job performance, plaintiff contends that she was never warned that her performance was not satisfactory.[5] In fact plaintiff alleges that she was told she was doing a good job. (Plaintiff's affidavit, p. 2).[6] In fact, although defendant contends that plaintiff's leadman, Rufus Williams, had complained of her performance, Williams denies making any such complaints. (Williams' Affidavit, p. 3). Considering these factors in the light most favorable to the plaintiff, this court finds that a question of fact exists as to whether defendant's articulated reason is in fact a pretext. Defendant's motion for summary judgment, therefore, is DENIED.

### IV. Motion for Bifurcated Trial

Defendant requests that the issues of liability and remedies be tried separately. Plaintiff having joined in this request, it is hereby GRANTED.

In summary, the court:

1) GRANTS defendant's motion for reconsideration and DISMISSES Koppers as a party to the action;

2) DENIES defendant's motion for summary judgment; and

3) GRANTS defendant's motion for a bifurcated trial.

---

**4.** Defendants contend that Ms. Rogers was transferred pursuant to doctor's orders. The doctor's statement presented by defendant, however, only indicates that Ms. Rogers was seen in the doctor's office, not that the doctor ordered a transfer or even that the doctor said her problems were due to the oven.

**5.** There is evidence that on February 20, 1981, plaintiff was reprimanded for not wearing her

safety goggles. (Defendant's Exhibit #C). However, this goes to only one of the stated reasons for discharge and not to the accusation of poor job performance.

**6.** The failure to warn and thereby given an opportunity for improvement has been considered evidence of pretext. *See e.g., Macey v. World Airways, Inc.,* 14 F.E.P. 1426 (N.D.Cal. 1977).