861 F.2d 1541
 48 Fair Empl.Prac.Cas. 1089,
48 Empl. Prac. Dec. P 38,548
J.T. RAMSEY, Plaintiff-Appellee, Cross-Appellant,
v.
CHRYSLER FIRST, INC., f/k/a FinanceAmerica a BankAmerica
Financial Service Co., Inc.,
Defendants-Appellants, Cross-Appellees.
 No. 87-3641.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 27, 1988.
 
 Michael J. Dewberry, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., for defendants-appellants, cross-appellees.
 Rodney W. Smith, Alachua, Fla., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Middle District of Florida.
 Before ANDERSON and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 The defendant Chrysler First, Inc., formerly known as FinanceAmerica, Inc., appeals from the district court's denial of the company's motions (1) for judgment notwithstanding the verdict, with respect to liability and liquidated damages for age discrimination against an employee, and (2) for a new trial. The defendant also seeks review of the calculation of an award of attorney's fees to the plaintiff. Plaintiff J.T. Ramsey cross-appeals on the issues of the calculation of attorney's fees and future earnings and moves for an award of attorney's fees for this appeal. For the reasons set forth below, we affirm the district court's rulings and remand only for the assessment of plaintiff's attorney's fees for this appeal.
 
 I. BACKGROUND
 
 2
 Plaintiff Ramsey has been employed for over 30 years by defendant Chrysler First, Inc., formerly FinanceAmerica, Inc., a consumer financing company. He is currently an Area Director of the Consumer Division in North Florida. In 1979, Ramsey was promoted to the position of Vice President of the Midwest Region. In June 1980, he was promoted to Senior Vice President of that region. Ramsey remained in that position until 1982, when the Midwest Region was closed by management--for reasons unrelated to Ramsey's performance--and Ramsey was transferred to his current position. Ramsey continued at the same salary and benefits as in his Senior Vice President position. At the time this action was commenced, the Consumer Division of the company had four regions, each headed by a Senior Vice President. Each region also had a Vice President reporting to the Senior Vice President for the region.
 
 
 3
 When Ramsey moved to the position of Area Director in Florida, he believed, from conversations he had with company officers, that he would be promoted back to a Vice President or Senior Vice President job once an opening occurred. In August 1984, two positions of Senior Vice President and two of Vice President opened up and were filled by four men other than Ramsey, aged 42, 41, 38 and 34, respectively. Ramsey was then 53.
 
 
 4
 Ramsey filed an action against Chrysler First in March 1986 alleging he was discriminated against on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 ("ADEA"). The complaint alleged failure to promote the plaintiff to one of the four positions available in 1984.
 
 
 5
 On January 26, 1987, after a four-day trial, the jury returned a verdict in favor of the plaintiff, finding liability for age discrimination against him and awarding $42,205 in compensatory damages. Since the jury also found that the company's violation of the ADEA was willful, the court accordingly awarded an additional $42,205 in liquidated damages.
 
 
 6
 After two post-trial hearings, the district court awarded plaintiff (1) front pay in the form of an increased salary for the years 1987 to 1995, based upon the midpoint salary between the Vice President and Senior Vice President positions, and (2) attorney's fees of $68,288.
 
 This appeal followed.II. DISCUSSION
 
 7
 A. Denial of the Motion for Judgment Notwithstanding the Verdict
 
 
 8
 The standard for the denial of a judgment notwithstanding the verdict is "whether, considering the evidence in the light most favorable to the non-moving party, the evidence so strongly points in favor of one party that reasonable men could not reach a contrary verdict." Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1418-19 (11th Cir.1986), cert. denied, 479 U.S. 1090, 107 S.Ct. 1300, 94 L.Ed.2d 155 (1987).
 
 1. Liability
 
 9
 A prima facie case of age discrimination is established if plaintiff proves (1) that he is a member of the protected group; (2) that adverse employment action was taken against him, e.g., failure to promote; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for which he was rejected. Pace v. Southern Ry. System, 701 F.2d 1383, 1386 (11th Cir.) (citing Price v. Maryland Casualty Co., 561 F.2d 609, 612 (5th Cir.1977)), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435 (11th Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). Direct evidence of discriminatory intent will establish a prima facie case, Pace, 701 F.2d at 1388; likewise, the plaintiff may present sufficient evidence to provide a basis for an inference that age was a factor in the employment decision, id. at 1387, such as statistical proof of a pattern of discrimination, id. at 1388. Once a prima facie case has been established, the defendant must come forward with a legitimate, non-discriminatory reason for its action. Id. at 1387-88.
 
 
 10
 Appellant contends that no direct, substantial or statistical evidence of discriminatory intent was produced, that the evidence was not sufficient for the jury to have determined that plaintiff was qualified for the positions in question, and that, even if Ramsey established a prima facie case of discrimination, he failed to rebut the specific reasons advanced by the company for not promoting him, such as differences in philosophy and management style and negative behavior on plaintiff's part.
 
 
 11
 Appellee avers that his job evaluations provide proof that his qualifications exceeded the requirements for the jobs given to younger persons. Ramsey also cites several statements made by company employees that he contends prove that age was a determinative factor in the decision to bypass him for promotion. For example, Ramsey testified that he had a conversation with Chrysler First's Chief Operating Officer, Ed Rabenold, at a company meeting and expressed his desire to be promoted to one of the open positions. According to Ramsey, Rabenold replied that there was a new pool of individuals to be considered and that the company "had to promote younger guys in order to avoid losing them." Mr. Rabenold testified that he did not know if he ever used the term "younger."
 
 
 12
 The plaintiff, at age 53, was in the group protected by the ADEA, since he was at least 40 years of age. 29 U.S.C. Sec. 631(a) (1988). Adverse employment action was taken against plaintiff when the company failed to promote him to one of the open positions despite his expressed desire to be promoted. The individuals promoted in his stead were 42, 41, 38, and 34 years of age, respectively. The plaintiff proffered performance evaluations for these individuals and for Ramsey and other evidence from which the jury could conclude that Ramsey was at least as qualified as those people who were promoted.
 
 
 13
 The conflicting testimony of Ramsey and Rabenold raised a genuine issue of material fact as to why Ramsey was not promoted while other younger men were. The jury considered the testimony of all of the witnesses, weighed the credibility of each and found that age was a determinative factor in the company's decision not to promote Ramsey.
 
 
 14
 The jury had sufficient evidence to conclude that plaintiff established a prima facie case of age discrimination and that the reasons asserted by the company for failing to promote plaintiff were merely pretextual. The district court thus properly denied defendant's motion for j.n.o.v. as to the issue of liability.
 
 2. Willfulness--Liquidated Damages
 
 15
 Double liability in the form of liquidated damages may be awarded when a "willful" violation of the Act is shown. Reynolds v. CLP Corp., 812 F.2d 671, 675 (11th Cir.1987) (citing TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 125, 105 S.Ct. 613, 623-24, 83 L.Ed.2d 523 (1985)). According to the standard enunciated in Thurston, at 128-29, 105 S.Ct. at 625-26, a violation is willful if the company knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. Appellant contends that even if liability was shown, the district court should have granted a j.n.o.v. on the issue of willfulness and thus denied liquidated damages.
 
 
 16
 The district court's instructions to the jury properly defined the Thurston standard and the plaintiff presented substantial evidence from which fair-minded jurors could reasonably conclude that Chrysler First either knew or showed reckless disregard for whether considering age in a promotion decision is unlawful.
 
 
 17
 The plaintiff proffered evidence of statements made by agents of the company to plaintiff and to another older employee about hiring younger men and of staff in the home office, where Mr. Rabenold worked, who were familiar with or were engaged in company duties related to compliance with Equal Employment Opportunity Commission standards.
 
 
 18
 We accordingly affirm the district court's denial of Chrysler First's motion for judgment notwithstanding the verdict with respect to willfulness and thus affirm the liquidated damages award.
 
 B. Motion for a New Trial
 
 19
 "The denial of a new trial is proper when, after weighing the evidence, the trial court cannot find that the verdict is contrary to the great weight of the evidence." Iervolino, 796 F.2d at 1419. On appeal, the trial court's denial of a new trial shall be reversed only for abuse of discretion. Id. Deference must be given to the judgment of the trial judge, who observed the witnesses and considered the evidence "in the context of a living trial." Shows v. Jamison Bedding, 671 F.2d 927, 930 (5th Cir.1982).
 
 
 20
 After careful review of the record, we conclude that the jury's verdict is not contrary to the great weight of the evidence. Accordingly, the district court's denial of the defendant's motion for a new trial is affirmed.
 
 C. Attorney's Fees Award
 
 21
 Plaintiff was entitled to an award of reasonable attorney's fees pursuant to 29 U.S.C. Sec. 626(b), incorporating by reference 29 U.S.C. Sec. 216(b), as the prevailing party. After a hearing, the district court awarded plaintiff $68,288 in attorney's fees.
 
 
 22
 Appellant now seeks a reduction in the fee award because of certain billing practices of plaintiff's counsel. The district court was convinced that the summaries of hours and the phone records were based on actual contemporaneous records and accurate reconstructions, as testified to by plaintiff's counsel, that rounding telephone calls to the next 1/4 hour did not cast doubt on the trustworthiness of the time-keeping practices used by plaintiff's counsel, and that the hours requested were reasonably required effectively to present plaintiff's case. Appellee maintains that the appropriate rate to use in determining the attorney's fee award is $125 per hour, not $100 as applied by the district court. We find that the district court did not abuse its discretion in applying the rate and determining the fee award, Mayson v. Pierce, 806 F.2d 1556, 1557-58 (11th Cir.1987), and we affirm the award.
 
 
 23
 In its award, the district court disallowed prelitigation attorney's fees, for approximately 42 hours expended by plaintiff's counsel in preparation for plaintiff's "first resort" to state and EEOC remedies for its claim of age discrimination. Appellee objects to this disallowance.
 
 
 24
 The ADEA mandates filing with a state administrative agency, in states with agencies empowered to remedy age discrimination, as a prerequisite to commencing an action in the federal district court. Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979).
 
 
 25
 It is unclear, however, whether prelitigation attorney's fees may be awarded to a plaintiff, employed by a private company, when the employee is successful in the federal district court on an ADEA claim and when the plaintiff had previously filed with the state administrative agency before bringing an action in the federal court. Compare New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (prelitigation fees awarded for a claim under Title VII of the Civil Rights Act); Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278 (2d Cir.1987) (prelitigation fees awarded for ADEA claim that succeeded in the federal district court); Bleakley v. Jekyll Island-State Park Authority, 536 F.Supp. 236 (S.D.Ga.1982) (prelitigation fees awarded for ADEA claim that was successful at the administrative level); with Kennedy v. Whitehurst, 690 F.2d 951 (D.C.Cir.1982) (no prelitigation fee awarded to counsel for federal employee whose claim was successful in federal court because administrative proceeding was not covered by the fee provision of the ADEA, which applies to an "action," as opposed to Title VII, which applies to any "action or proceeding").
 
 
 26
 Although a strong case can be made for following the decisions of those courts granting an award of prelitigation fees, we need not decide the issue on these grounds, because of the district court's finding of fact that the prelitigation services were unnecessary since they were actually duplicated later by other hours charged by plaintiff's attorney in connection with the litigation, for which he was compensated by the court's award. This finding is not clearly erroneous and thus can not be set aside. Since the hours spent were in fact compensated, we affirm the district court's denial of plaintiff's prelitigation attorney's fees.
 
 D. Front Pay
 
 27
 Plaintiff cross-appeals, contending he is entitled to more front pay than he received.
 
 
 28
 Ramsey said he would accept the lower-paying Vice President position, and the jury so found. The jury also found that he was entitled to promotion to the higher-paying job. The court awarded him pay that represented the half-way point between the two salaries. Thus, by receiving payment for an even higher position than one he might have been offered and actually accepted, Ramsey might have been given more than he was entitled to receive.
 
 
 29
 The award of front pay is a form of equitable relief; as such, "[t]he decision whether to grant [it], and, if granted, what form it should take, lies in the discretion of the district court." Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1563 (11th Cir.1988). We accordingly affirm the district court's grant of the front pay award.
 
 E. Appellate Fees
 
 30
 Appellee moves for an award of attorney's fees for this appeal. As this Court has stated:
 
 
 31
 Appellate attorney's fees may be awarded pursuant to the remedial provisions of the FLSA that Congress incorporated into the ADEA when the appellate court considers such an award appropriate. We may make our own assessment of the amount of such fees to be awarded. We choose, however, to instruct the district court on remand to assess the amount of attorney's fees to be awarded [plaintiff] for this appeal.
 
 
 32
 O'Donnell v. Georgia Osteopathic Hosp., Inc., 748 F.2d 1543, 1553 (11th Cir.1984). We also remand this case to the district court with instructions to assess the amount of attorney's fees to be awarded plaintiff for this appeal.
 
 
 33
 AFFIRMED AND REMANDED.