Floyd **ROBERTSON**, Plaintiff,

v.

**THE HOME DEPOT (U.S.A.), INC.**, Defendant.

No. 96–6255–CIV.

United States District Court, S.D. Florida, Miami Division.

Aug. 13, 1997.

---

Lee Cohn, Miami, FL, for Plaintiff.

Elizabeth P. Johnson, Heather Brock, Fowler, White, Burnett, Hurley, Banick and Strickroot, P.A., Miami, FL, for Defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon the defendant's motion for summary judgment filed July 7, 1997. This motion is ripe for resolution, and the Court took argument on it at pre-trial conference on August 7, 1997. After a thorough review of the record and pleadings, and having considered argument of counsel, the defendant's motion for summary judgment is GRANTED.

## I. INTRODUCTION

This is an action under 42 U.S.C. § 2000e et seq., as amended (1988), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (1988), the Fair Labor Standards Act, 29 U.S.C. § 621 et seq. (1988), and the Fair Labor Standards Act, 29 U.S.C. § 216 (1988), alleging that plaintiff was dis-

charged, not promoted, and treated differently than similarly situated employees because of plaintiff's race, ethnicity, and age.

## II. UNDISPUTED FACTS [1]

The plaintiff, Mr. Robertson, was hired by Home Depot on March 20, 1989, as a delivery driver in department 94 (deliveries) of Store 214 in Hollywood, Florida, at an hourly rate of $9.00. Mr. Robertson had been a truck driver for a number of years. Mr. Robertson is a Jamaican naturalized citizen, was 42 years old when he was hired by Home Depot, and 48 years old on the date his employment was terminated.

From 1989 until his termination, Mr. Robertson worked exclusively as a driver in the delivery department, with the sole exception of a five-month period from October 10, 1992 until March 15, 1993, when he worked as an hourly associate at the export desk of the special services department.[2] While working at the export desk, Mr. Robertson may have continued to work as a backup truck driver. Mr. Robertson was asked to assist with the backlog at the export desk and when the backlog was cleared, he returned to his full-time truck driver duties.

During his training with Home Depot, Mr. Robertson was given a job description for the truck driver position, which he read and signed. The daily duties listed included the following:

> "To never leave the keys in the ignition of the truck or forklift while unattended ... to ensure that at the end of your shift the truck is parked in a well-lighted area and all anti-theft devices are secured and locked in place."

During his employment, Mr. Robertson worked for a number of supervisors, includ-

---

1. The plaintiff's Statement of Material Facts as to which he contends there exists a genuine issue to be tried, served July 23, 1997, did not controvert the material facts of the moving party as required by Local Rule 7.5. However, rather than deem these facts admitted, the Court reviewed the movant's statement of material facts with counsel for the plaintiff during oral argument on August 7, 1997.

2. The parties disagree as to whether or not Mr. Robertson performed a supervisory role during this period of time. Mr. Robertson also contends that while working at the export desk he was told that he would be up for the next available position as a supervisor. Home Depot does not agree with this assertion. These disputes are not material to the Court's ruling.

ing at least two black department heads. On his semi-annual performance appraisals, Mr. Robertson was most often rated a "3"—"consistently meets expectations." On December 3, 1990, he rated a "3.5," and on February 18, 1991, he was rated a "4"—"often exceeds expectations." On his subsequent evaluation, Mr. Robertson rated a "2.5" and on March 20, 1993, immediately after working at the export desk, he rated a "2"—"sometimes fails to meet expectations." Mr. Robertson received a "2"—"sometimes fails to meet expectations" on his final evaluation dated March 12, 1995.

Between May of 1993 and April of 1995, Mr. Robertson received four written warnings of poor job performance and/or violations of company policy. These warnings indicate, among other things, Mr. Robertson's failure (i) to comply with company policies and procedures regarding paperwork for deliveries, (ii) to communicate with supervisors about deliveries, and (iii) to complete deliveries.

For some period of time prior to the incidents leading to plaintiff's termination, Home Depot was experiencing a number of thefts of company vehicles from its property, and prior to plaintiff's termination, a number of cars belonging to Home Depot customers and employees had been stolen from the parking lot of store 214.

On July 16, 1995, Mr. Robertson was disciplined for violation of company policies and procedures when he was found to have left the delivery truck running, with the keys in it, at the back of the store. Mr. Robertson was advised both orally, and in an Employee Notice completed by his assistant manager, Paige Bickman, that if he left the truck unsecured again, he would be terminated. Plaintiff did not deny that he had left the truck running with the keys in it.

Three weeks later, on August 6, 1995, Robert Warmstein, the administrative assistant manager, notified the store manager, Peter Teixeira, that he had found the flat bed delivery truck unlocked and unattended behind the store. Aware of the July 16th inci-

dent, Mr. Warmstein recommended that Mr. Robertson receive disciplinary action, and in accordance with company policy and procedures, reviewed plaintiff's personnel file and ascertained that plaintiff had received at least five written disciplinary actions in the preceding eight months. Mr. Teixeira consulted with the Home Depot human resources manager, who agreed that Mr. Robertson should be terminated, subject to a reasonable explanation of the policy violation. The next day, a meeting was held with Mr. Robertson, Mr. Teixeira, Mr. Warmstein and Ms. Bickman, where Mr. Robertson was presented with the Employee Notice, and was given an opportunity to explain what happened. Mr. Robertson did not offer any explanation, and accordingly, he was terminated by Mr. Teixeira. Mr. Robertson has admitted that he was the only truck driver on duty that day, but states that he does not remember if he did or did not leave the truck unlocked and unattended behind the store.

There is no evidence that Mr. Teixeira, Mr. Warmstein or Ms. Bickman has ever made a racial, ethnic or age-related slur. The only remark Mr. Robertson identified as discriminatory was one made by Peter Teixeira sometime in 1995 during a counseling session in which Mr. Robertson was being reprimanded for negligence in transporting company property, which resulted in a $2,700 loss to the company. Mr. Robertson explained to Mr. Teixeira that he did not think that the accident was his fault, and Mr. Teixeira agreed not to give him a written disciplinary notice. At the conclusion of the meeting, as he was walking out of Mr. Teixeira's office, Mr. Robertson testified in his deposition that he overheard Mr. Teixeira say "those people." He did not hear Mr. Teixeira say anything else.

Mr. Robertson never heard anyone at Home Depot say that he was too old, and he never complained about age discrimination during the time he was employed there.

On or about August 15, 1995, Mr. Robertson completed a fact-finding statement which he submitted to the State of Florida Depart-

ment of Labor and Employment Security, Division of Unemployment Compensation. Mr. Robertson filed a charge with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission on or about November 16, 1995, which alleges that he was discharged "based upon the fact that I was black, of Jamaican descent, over 40, and with the company longer than anticipated." The EEOC issued its right to sue notice on January 24, 1996, without making any determination as to cause.

In addition to the discharge claim made in the EEOC charge, Mr. Robertson testified at his deposition that he believes he should be have been promoted to supervisor of the special services desk, after Steve Banks left the position in February, 1992. He identified five people whom he believed were given the job he sought. All of the persons who Mr. Robertson contended were less qualified had received performance appraisal ratings superior to those received by Mr. Robertson.

## III. STANDARD OF REVIEW

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As the Eleventh Circuit has explained:

> In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398

U.S. at 157, 90 S.Ct. at 1608; *Marsh,* 651 F.2d at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031; *Croley v. Matson Navigation Co.,* 434 F.2d 73 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1609–10 ...; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir. 1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which district courts should apply when ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further acknowledged that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 243, 106 S.Ct. at 2507. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding in his favor, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In a companion case, the Supreme Court declared that a non-moving party's failure to prove an essential element of its claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33, 106 S.Ct. 2548, 2552–58, 91 L.Ed.2d 265 (1986). We measure the Plaintiff's motion for summary judgment against these standards.

## IV. TITLE VII CLAIMS

### A. The Discharge Claim.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1)(1988). The plaintiff may establish a prima facie case of discrimination under Title VII on the basis of statistical proof of a pattern of discrimination, or on the basis of direct evidence of discrimination, which consists of "evidence which, if believed, would prove the existence of discrimination without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir.1989). In the usual case, however, direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (i) that plaintiff belongs to a protected class, (ii) that plaintiff applied and was qualified for a job for which the employer was seeking applicants, (iii) that, despite his qualifications, he was rejected, and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824.

Home Depot concedes that Mr. Robertson has satisfied prongs 1, 3 and 4. What is at issue is whether Mr. Robertson has satisfied the second prong. Mr. Robertson argues that because he was an average, licensed, safe driver who had worked as a truck driver at Home Depot for six and a half years that he meets the "qualification" prong of his

prima facie case. Home Depot contends that Mr. Robertson has not satisfied the second prong because he was not performing according to its legitimate expectations and that was the reason for his termination. Home Depot cites to the fact that Mr. Robertson had committed the exact same infraction of an express company policy three weeks after being told he would be discharged if he repeated the infraction. It also contends that a factor in making this determination was the fact that Mr. Robertson had received at least five written disciplinary actions in the preceding eight months.

The Court must determine what standard to employ to determine if Mr. Robertson has satisfied this crucial second prong. In *Holifield v. Reno*, 115 F.3d 1555, 1565 n. 7 (11th Cir.1997), the Eleventh Circuit, in determining if the plaintiff was performing adequately stated that the issue was whether he "was performing well at the time of his reassignment and at the time of his termination."[3]

*Holifield* appears to authorize the Court to scrutinize the circumstances that existed at the time of termination in order to determine whether the plaintiff is "qualified" for purposes of demonstrating a prima facie case. Mr. Robertson's March 12, 1995 evaluation reflected that he "sometimes fails to meet expectations." On July 16, 1995 he had been advised that he would be terminated if he ever left a truck unsecured again. Moreover, Mr. Robertson had received five written disciplinary actions in the eight months leading up to his termination. Mr. Robertson was obviously on very thin ice at the time of his termination with respect to his "qualifications" and his likelihood of maintaining employment. Laying aside for the moment the August 6, 1995 episode which resulted in

termination, it is not at all apparent that Mr. Robertson meets the "qualified" prong to make a prima facie case.

If the August 6, 1995 incident is considered, Mr. Robertson cannot be said to be "qualified." He had been previously told that if he left a truck unsecured he would be terminated, and three weeks later he had done so again. *See, Kizer v. Children's Learning Center,* 962 F.2d 608 (7th Cir.1992); *Hamalainen v. Mister Grocer Corp.,* 735 F.Supp. 1025 (S.D.Fla.1990).

The Court is wary, however, of considering the event which allegedly precipitated termination in determining whether the plaintiff meets the qualification prong of the *McDonnell Douglas* prima facie case. Consideration of the precipitating event arguably collapses the *McDonnell Douglas* test and obviates a plaintiff's ability to establish pretext.[4] Consequently, although doubtful that plaintiff can establish a prima facie case, the Court will proceed with the analysis set out in *McDonnell Douglas.*

1. Home Depot has articulated a "legitimate, nondiscriminatory reason" for discharge.

If the Court concludes that the plaintiff has established his prima facie case of discrimination under Title VII, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employer's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. At this stage of the inquiry, the defendant need not persuade the court that its proferred reasons are legitimate; the defendant's burden is "merely one of production, not proof." *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1141 (11th Cir.1983). "The defendant

3. The Eleventh Circuit cited *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332 (7th Cir. 1991) as support for this proposition. The Seventh Circuit held that when deciding if a plaintiff has satisfied the qualification prong of the prima facie case the court must focus on the plaintiff's performance at the time of his termination.

4. In *Gill v. Reorganized Sch. Dist. R–6 Festus, Mo.,* 32 F.3d 376, 378 (8th Cir.1994), the Eighth Circuit Court of Appeals stated that the district court "prematurely focused on the alleged misconduct that triggered the adverse employment decision" when it took into account at the prima facie stage of the analysis the event that triggered the discharge. *See also, Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1994); *Weldon v. Kraft, Inc.,* 896 F.2d 793 (3rd Cir. 1990).

need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.... To satisfy the intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1096 (1981).

■ A large number of reported cases support Home Depot's claim that its reason for termination was a "legitimate, non-discriminatory" reason. Courts have held that these "legitimate, non-discriminatory" reasons may be poor work performance,[5] violation of work rules,[6] safety violations or bad safety record.[7]

The reason offered by Home Depot for its termination of Mr. Robertson was violation of company policies and procedures. The decision to terminate Mr. Robertson was further based upon Mr. Robertson's prior discipline for an identical problem, his history of performance problems, and the company's concern about ensuring the safety of its property. These are legitimate, non-discriminatory reasons for Mr. Robertson's termination. Home Depot has met its burden of production.

### 2. Mr. Robertson's Claims of Pretext.

Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. According to the United States Supreme Court: "The plaintiff now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision ... The plaintiff may succeed in this either directly by persuading the court that the discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns*, 106 F.3d at 1528 (11th Cir.1997), *citing, McDonnell Douglas*. This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff. *Holifield*, 115 F.3d at 1565; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the em-

---

**5.** *Noble v. Alabama Dep't of Env. Management*, 872 F.2d 361 (11th Cir.1989); *Dybczak v. Tuskegee Inst.*, 737 F.2d 1524 (11th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985).

**6.** *Evans v. Meadow Steel Products Inc.*, 579 F.Supp. 1391 (N.D.Ga.1984); *Nix v. WLCY Radio*, 738 F.2d 1181, *reh'g denied*, 747 F.2d 710 (11th Cir.1984) (The radio station had a rule against moonlighting. Nix, a black radio manager, was fired along with a white announcer when the station found out that they had apparently formed a partnership for doing work on the side. The station subsequently determined that the white announcer had never done any work for the partnership after he was hired by the station, and reinstated him, but not Nix. Even though the district court subsequently determined that Nix also had not violated the station's policy, the

Eleventh Circuit found this insufficient to establish intentional discrimination.)

**7.** *Graham v. Jacksonville Coach Co.*, 568 F.Supp. 1575 (M.D.Fla.1983). The court concluded that the transit authority's discharge of a black bus driver was not racially motivated. The plaintiff had the worst driving record of anyone still employed by the company. He had been given adequate warning of his poor driving record and was retained longer than any other driver following his ninth preventable accident. The company employed more black bus drivers than white drivers and, of the drivers discharged for poor driving records, nine were white and only five were black. In light of the employer's responsibility for safety, the employer's reasons for the discharge were sufficient to rebut the plaintiff's allegations of discrimination.

ployer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race. *Holifield,* 115 F.3d at 1565.

Then the Court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct." *Combs,* 106 F.3d at 1538.

A plaintiff, relying on evidence that the employer's proffered reasons are unworthy of credence as the basis for an inference of intentional discrimination, will only succeed if there is sufficient evidence for a reasonable person to conclude that the employer's proffered reasons were not the basis for the employment decision. To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1564 (11th Cir.1995) (Johson, concurring).

Mr. Robertson argues that his evidence of pretext falls into four categories: (1) The "those people" remark; (2) the contention that other employees committing infractions were not terminated; (3) the Derrick Brown affidavit; and (4) a racial slur by a co-worker.

### a. "Those people" remark.

■ Mr. Robertson has attempted to prove pretext by introducing a single phrase he allegedly overheard Mr. Teixeira make sometime in 1995 when Mr. Teixeira was reprimanding Mr. Robertson for negligently damaging a television. As Mr. Robertson was leaving Mr. Teixeira's office (where he had successfully convinced Mr. Teixeira not to discipline him), he claims he heard him say "those people" and assumed it was a reference to his ethnicity. The court agrees with Home Depot that this single, ambiguous comment—assuming it was made—cannot establish pretext.

### b. Discipline of Other Employees.

■ Mr. Robertson argues that other employees who violated Home Depot's rules were not terminated and that this demonstrates that the reason given for his firing is pretextual. To make a comparison of the plaintiff's treatment to that of non-minority employees, however, the plaintiff must show that he and the employees are similarly situated in all relevant respects. *Holifield v. Reno,* 115 F.3d at 1562 (11th Cir.1997); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992); *Smith v. Monsanto Chemical Co.* 770 F.2d 719, 723 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). In determining whether employees are similarly situated it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Holifield,* 115 F.3d at 1562.

Mr. Robertson points to a white employee who was not terminated despite injuring a co-worker by running over his foot while carelessly operating a forklift and an instance where another employee spilled paint and caused a fire. There is no evidence that either of these employees had employment records like Mr. Robertson's or had been warned that a similar infraction would result in termination.

Mr. Robertson also cites an instance where he claims a white employee who had not been certified to handle hazardous materials drove a truck carrying such materials. Home Depot points out, however, that there is no evidence that any decision maker was aware of the violation.

Finally, Mr. Robertson argues that employees, including assistant manager Bick-

man had driven trucks, or allowed trucks to be driven, without a Ryder training certification. Ms. Bickman acknowledged that occasionally trucks had been moved by employees without the certification, but denied that this type of transgression was as serious as Mr. Robertson's. None of the employees cited by Mr. Robertson are similarly situated since there has been no showing that these employees had similar work evaluations or had been previously warned that another transgression would result in termination.

c. The Derrick Brown Affidavit.

■ Mr. Robertson includes in his response to the motion for summary judgment the affidavit of Derrick Brown, an ex-employee at Home Depot. Brown states that black employees are treated differently than white employees at Home Depot with respect to promotions, evaluations, and discharge. The affidavit does not speak of incidents of discrimination concerning Robertson; rather, Brown, who left Home Depot in 1993, offers the conclusory opinion that racial discrimination existed at Home Depot. The alleged biases of other staff members are not relevant. *Holifield,* 115 F.3d at 1563.

d. The Racial Slur by a Co-Worker.

Robertson also alleges that Rich Calise, an ex-employee at Home Depot referred to Robertson as a "Black S.O.B." in August, 1991. Mr. Calise was not a manager or supervisor. "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Holifield,* 115 F.3d at 1563–64; *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990); *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984).

B. Failure to Promote Claim

■ Home Depot contends that Mr. Robertson's failure to promote claims should be dismissed because they (i) are outside the scope of the EEOC charge, (ii) are time barred, and (iii) fail to state a prima facie case.

The charge of discrimination filed by Mr. Robertson states as its first paragraph:

> I believe that The Home Depot discriminated against me based on the fact that I was a black of Jamaican descent, in violation of Title VII of the 1964 Civil Rights Act as amended, and in violation of the Age Discrimination in Employment Act (ADEA) of 1967 as amended when the company discharged me from my position as Driver.

The concluding paragraph of his statement is as follows:

> I believe I was discharged based on the fact that I was black, of Jamaican descent, over 40, and with the company longer than anticipated. The company's position that I was fired for misconduct was a pretext, and that I was fired based upon my race, color and age.

The only mention of promotion in Mr. Robertson's charge was in the sixth paragraph, which states:

> I initially thought that policy at the company was becoming more stringent, but it became obvious that white employees were not being subjected to the same kind of scrutiny as the black employees. Even more revealing was the fact that black employees beyond three years with the company were being systematically forced to resign or were fired. Furthermore, white employees were regularly promoted while black employees with the same or similar qualifications were not. Clearly, the only policy that was enforced was that black employees with the company for any extended period of time (generally beyond three years) were either not promoted, fired or forced to resign.

Reading of Mr. Robertson's charge shows that he was complaining about his termination by Home Depot, rather than any failure to promote him. The reference to promotion is a general statement about treatment of employees at the company used to bolster his claim that his firing was discriminatory. The language, reasonably

read, does not suggest an implicit failure-to-promote claim. As the Eighth Court of Appeals stated in *Shannon v. Ford Motor Co.,* 72 F.3d 678 (8th Cir.1996), "there is a difference between liberally reading a claim which 'lacks specificity' and inventing *ex nihilo,* a claim which simply was not made." *Id.* at 685. *See also, Weaver v. Fla. Power & Light Co.,* No. 95–8519–CIV–RYSKAMP, 1996 WL 479117 (S.D.Fla.1996). The failure to promote claim is outside the scope of the EEOC charge.

Moreover, the position Mr. Robertson claims he should have been promoted to was last filled in August, 1994. It is undisputed that the challenged promotion falls outside the 300 day period prior to the filing of Mr. Robertson's EEOC charge on November 16, 1995.

■ Mr. Robertson seeks to avoid the limitations requirement by alleging a "continuing violation." However, the critical question is "whether any present violation exists." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). "A past act of discrimination for which a party did not file a charge of discrimination with the EEOC within the limitations period is legally equivalent to a discriminatory act that occurred before the enactment of Title VII." *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period or the continuation of that violation into the present which does." *Knight v. Columbus, Ga.,* 19 F.3d 579, 581 (11th Cir.1994).

Here, Mr. Robertson does not allege any failure to promote which occurred within the limitations period. The only discriminatory act complained of which falls within the period is the August, 1995 termination. However, Mr. Robertson has produced no evidence linking the termination with the alleged August, 1994 failure to promote. *See, Gallagher v. Croghan Colonial Bank,* 89 F.3d 275 (6th Cir.1996) (holding plaintiff's untimely charge regarding transfer is not made timely through continuing violation by reason of her subsequent dismissal). There is no basis for application of the continuing violation doctrine to resuscitate the failure to promote claim.

■ Assuming that it is implicit in the EEOC charge and that it is not time barred, Mr. Robertson's failure to promote claim cannot survive summary judgment. The plaintiff does not dispute Home Depot's showing that each of the individuals who held the Special Services Desk Supervisor position received performance appraisals superior to those he received.[8] Mr. Robertson offered no evidence that he was as qualified as the individuals who were promoted or transferred into the position and therefore Home Depot is entitled to summary judgment on the failure to promote claim. *Combs,* 106 F.3d at 1538–1543.

## V. Section 1981 Claim.

Home Depot's motion for summary judgment is granted on the Section 1981 claim for the reasons set out in the Title VII analysis.[9]

## VI. ADEA Claim

The *McDonnell Douglas* formula is applied to ADEA cases involving refusal to hire or

---

8. Charlie Farrell, a black male who held the position in early 1992 received performance ratings of "4" in August 1991 and June 1992. Stan Moore, a black male who held the position from September 1992 until February 1993 received three "4" ratings and one "3.5" rating prior to his transfer to the department. Steve Hubschman, who temporarily assumed the duties, was already a supervisor in another department and had previously received ratings of "3" and "4". Bob Laird, who was also already a supervisor when he was transferred to be special services department supervisor had consistently received "4" ratings. Chris Scafidi, a caucasian male who has held the position since August 1994 had received only "3" and "4" ratings and had two years experience working at the special services desk. (Home Depot's Statement of Undisputed Material Facts at pp. 7–9; Teixeira Aff. at ¶¶ 20–25).

9. Courts have commonly applied the same standard of liability for employment discrimination cases alleging Title VII and Section 1981 violations because the elements of each are the same. *New York City Transit Authority v. Beazer,* 440 U.S. 568, 583, 99 S.Ct. 1355, 1364–65, 59

**1478**

promote. In *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541 (11th Cir.1988), the court listed the following factors which establish a prima facie case for age discrimination: (1) that he is a member of a protected group; (2) that adverse employment action was taken against him; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for which he was rejected. *Id.* at 1543. The final prong of this analysis is the same as the second prong of the prima facie case for a Title VII violation.

The Court finds that even if Mr. Robertson has met his prima facie case, Home Depot has a legitimate, non-discriminatory reason for terminating his employment. Because of Mr. Robertson's failure to produce any evidence demonstrating pretext, Home Depot's motion for summary judgment on the ADEA count is GRANTED.

## VII.  PUNITIVE DAMAGES CLAIM

The Court finds that Mr. Robertson has not come forward with any evidence that Home Depot acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual," and therefore Mr. Robertson's demand for punitive damages is DENIED. 42 U.S.C. § 1981A(b)(1).

## VIII.  ATTORNEY'S FEES

Mr. Robertson's demand for attorney fees is DENIED.

## IX.  CONCLUSION

Since Home Depot has proffered evidence supporting a legitimate, non-discriminatory reason for Robertson's discharge, and Robertson has not come forward with any evidence to show that this reason is pretextual, summary judgment is warranted on all counts.

Therefore, upon careful consideration of the record and for the reasons discussed above, it is, ORDERED AND ADJUDGED that defendant Home Depot's motion for summary judgment is hereby GRANTED.

DONE AND ORDERED at Miami, Florida this 13th day of August, 1997.

L.Ed.2d 587 (1979) (holding that Section 1981 "afford no greater substantive protection than Title VII"); *Lincoln v. Board of Regents,* 697 F.2d 928 (11th Cir.1983); *Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.); *McAlester v. United Air Lines,* 851 F.2d 1249, 1255 (10th Cir.1988) ("in fashioning a substantive body of law under § 1981, the court should, in an effort to avoid substantive law conflicts, look to the principles of law created under Title VII for direction"); *Scott v. Federal Reserve Bank,* 704 F.Supp. 441, 448 (S.D.N.Y.1989) ("a claim for relief under § 1981 provides no greater protection against discriminatory employment practices than Title VII, and the elements and the allocation of the burdens of proof are the same under the two statutes").