794 F.2d 383
 41 Fair Empl.Prac.Cas. 266,
41 Empl. Prac. Dec. P 36,547
Kim Schmid SCHNEIDER, Appellant,
v.
JAX SHACK, INC., d/b/a Jax Shack Restaurant; Emma Lou
Mettlen and John Mettlen, Appellees.
 No. 85-1653.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 12, 1986.
Decided June 30, 1986.
 
 Thom K. Cope, Lincoln, Neb., for appellant.
 Richard H. Williams, Lincoln, Neb., for appellees.
 Before LAY, Chief Judge, and ROSS and WOLLMAN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Kim Schmid Schneider appeals the dismissal of her claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 (1982), that she was unlawfully discharged because of her pregnancy. The district court, based on stipulated evidence including the record from a state equal opportunity commission administrative proceeding, found that Schneider had failed to establish a prima facie case of discrimination because she did not show a discharge. We reverse and remand.
 
 
 2
 Schneider had been employed as a bartender at the Jax Shack Restaurant for more than three years when, in November 1981, she informed her employers that she was pregnant. Her employers responded that because Schneider's job involved hazards, such as heavy lifting and walking on wet, slippery floors, that might threaten her pregnancy, Schneider could not work behind the bar after the first of the year. Schneider was told that she might instead work part time as a cocktail waitress. Then, in mid-December, Schneider was informed that she definitely would be able to work full time as a waitress during January because of the absence of another employee. Schneider, however, replied that she had by then found another job. Her last day at the Jax Shack was December 24, 1981.
 
 
 3
 Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual * * * because of such individual's * * * sex." 42 U.S.C. Sec. 2000e-2(a)(1). The term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. Sec. 2000e(k). Although the district court clearly accepted the direct evidence that the prospective employment action involving Schneider was based on her pregnancy, it found it unnecessary to consider the Jax Shack's possible justifications, such as bona fide occupational qualification, see id. Sec. 2000e-2(e), for the sex-based job determination. The court instead held that Schneider had not established a prima facie case because she had not shown a discharge. Specifically, the court held that Schneider had not shown a "constructive discharge," as that concept was defined in Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981), because her employers did not take the discriminatory job action with the intention of causing her to resign.
 
 
 4
 We conclude, however, that the district court should have focused first on the antecedent question of whether there had been an actual discharge. The doctrine of constructive discharge is addressed to the situation where an employee quits because of intolerable working conditions, and the doctrine thus by definition assumes the absence of an explicit discharge. The findings of fact made by the district court suggest that an explicit discharge did in essence occur here.
 
 
 5
 For example, the court made a specific finding that Schneider "reasonably could have believed that her employment at Jax Shack might not continue beyond January 1, or, if it did, it likely would continue only on a possibly sporadic part-time basis." The court also found that when Schneider obtained her new job she had only a "vague offer of cocktail waitressing" at the Jax Shack and that "[t]he more tangible offer of work for the month of January, without any indication of what would happen after that, would have appeared [to her] merely to postpone her termination for a month, rather than protect her against discharge based on her pregnancy." Although the district court further found that Schneider's employers had "intended" to reassign her to duties more in keeping with their perceptions of the limitations of pregnant women, it also found that they had only intended to give Schneider such other work "when [they] could." We do not believe that, in identifying a "discharge," lack of a subjective intent to fire Schneider can outweigh the objective fact that the Jax Shack was not committed to employing her. Employers should not be able to avoid responsibility for discriminatory discharges by first demoting employees to part-time or fill-in status or by stringing out employees' tenures with nebulous commitments until the employees for their own economic well-being must "quit."
 
 
 6
 Our opinion here should by no means be read as holding that all job reassignments involving reductions in hours or irregular work schedules constitute "discharges." We hold only that in the proper case, the realities of the employee's situation, as well as the employer's label for its job action, should be taken into account in determining whether a discharge has in essence occurred. We find this to be a proper case for such consideration, and we conclude from the district court's findings of fact that the Jax Shack in essence explicitly terminated Schneider's employment.
 
 
 7
 We reverse the judgment and remand this case to allow the district court to consider the Jax Shack's defenses to Schneider's prima facie case of sex discrimination.
 
 
 8
 ROSS, Circuit Judge, dissenting.
 
 
 9
 I do not agree that there was an "explicit discharge" in this case. The employer took the only course consistent with the health of the employee and his own business. I agree completely with the reasoning of Judge Urbom as expressed in his opinion as follows:
 
 
 10
 It is clear that the defendants never intended to discharge the plaintiff or cause her to resign. The intent was to remove her from bartending duties after January 1 and give her other duties in the lounge more in keeping with the management's perceptions of the limitations of pregnant women in general and, in part, of the plaintiff in particular once her condition became more advanced. The offer of cocktail work in January does not indicate an intent to fire the plaintiff after January, but was a sign that Maughan was willing to give her cocktail work when she could. There is no evidence that the defendants intended to discharge the plaintiff later against her will. Instead, Mrs. Mettlen testified, a waitress in the restaurant had worked during her pregnancy until she voluntarily quit, and each case is treated separately. As for the plaintiff, Mrs. Mettlen agreed that the plaintiff could have come back after the baby was born "[a]t her wishes, and whatever period of time she wanted to take off[.] ... And there wasn't any discussion about that she had to be off any particular period of time[.]"
 
 
 11
 I would affirm the ruling of the district court.