United States Court of Appeals,

Eleventh Circuit.

No. 96-2966.

Non-Argument Calendar.

Sue E. THOMAS, Plaintiff-Appellant,

v.

DILLARD DEPARTMENT STORES, INC., a Delaware Corporation Defendant-Appellee.

July 14, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-445-CIV-J-20), Ralph W. Nimmons, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and PROPST[*], Senior District Judge.

BARKETT, Circuit Judge.

Sue E. Thomas appeals from the district court's order granting judgment as a matter of law to the defendant Dillard Department Stores, Inc. Thomas alleges that she was terminated from her position with Dillard because of her age in violation of the ADEA. Thomas argues that the district court erred in determining as a matter of law that she was not actually "terminated" from employment where her employer removed her from her present position and subsequently appeared to offer her an alternative position. Because we find that the question of whether Thomas was actually terminated should have been submitted to the jury, we vacate the district court's judgment.

I. BACKGROUND

On June 8, 1993, Thomas filed a charge of age discrimination with the Jacksonville Equal Opportunity Commission, alleging that she had been terminated from her position as an Area Sales Manager (ASM) with Dillard because of her age. Thereafter, on May 5, 1994, Thomas filed suit against Dillard alleging willful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, as amended.

Shortly before trial, on April 11, 1996, the parties entered into a stipulation regarding the

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

issues to be presented to the jury and the damages Thomas would recover if she received a favorable jury verdict.[1] In particular, Thomas stipulated that she was not pursuing a constructive discharge theory. Rather, the threshold question for the jury was whether Thomas had in fact been fired or had merely resigned after being demoted.[2] At the close of plaintiff's case in chief, defendant moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. The district court granted defendant's motion on the basis that "[a]s a matter of law, where the employee is offered an alternative job in the organization, there is no express termination.... [T]here is no legally sufficient evidentiary basis for a reasonable jury to find that there was an express termination of the Plaintiff's employment."

Thereafter, Thomas timely filed a Rule 59(e) motion to alter or amend the court's judgment, which was denied. Thomas appeals the district court's order and judgment.

II. DISCUSSION

We review the district court's order granting judgment as a matter of law de novo, applying the same standard applied by the district court. *Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993). Thus, we must view the evidence:

> "in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper. On the other hand, if there is substantial evidence opposed to the motion[ ], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied."

*Walls,* 1 F.3d at 1200 (reversing the district court's judgment as a matter of law for the defendant in an ADEA case).

Appellant contends that the district court erred in holding as a matter of law that there was no actual termination because she was subsequently offered an alternative job in the organization. Appellant, joined by the Equal Employment Opportunity Commission (EEOC) as amicus curiae, argues that under the facts of this case the issue of whether she received a bona-fide offer of

---

[1]The stipulation provided that if Thomas prevailed at trial, she would receive $50,000 in back pay and $20,000 in front pay, for a total of $70,000.

[2]Thomas concedes that should the jury have found a demotion, not a termination, Dillard would be entitled to a judgment as a result of their stipulation.

alternative employment or was, in reality, fired, is a jury question. Appellant and the EEOC argue that the inquiry as to whether an employee was actually terminated under the ADEA is fact-sensitive, cannot be automatically foreclosed simply by an apparent offer of an alternative position, and involves analysis of the employer's intent and the specific circumstances in which the challenged job action was taken. Appellant contends that there is sufficient evidence in this case to permit reasonable minds to conclude that her employer intended to terminate her, and did so, and that the offer of an alternative position was simply a reluctant and insincere offer of re-employment.[3]

Dillard contends that by considering appellant's approach we would overturn a longstanding body of jurisprudence relating to the theory of constructive discharge, which holds that an employee may be deemed to have been discharged where the terms or conditions of employment under which she is asked to work are so intolerable that a reasonable person in her position would have been compelled to resign. *See, e.g., Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993); *Wilson v. S & L Acquisition Co., L.P.,* 940 F.2d 1429, 1436 (11th Cir.1991); *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980). Specifically, Dillard argues that appellant's approach would alter the burden of proof in constructive discharge cases because employees would no longer have to prove that their decision to leave their employers was reasonable in light of the conditions of employment. Thus, Dillard suggests that employees would simply be able to quit after demotions and then claim they were discharged regardless of the reasonableness of their resignations.

Dillard's argument is misplaced because the actual termination inquiry advocated by appellant is distinct from the traditional constructive discharge doctrine and contains its own burdens that plaintiffs must shoulder. Appellant's approach would require employees to show that their employers intended to and did terminate them in light of the specific circumstances of the challenged

---

[3]Appellee argues that an employer would have no reason to offer an alternative position to a terminated employee unless the offer was sincere. However, as the EEOC points out, an employer may seek to improve its legal position after an illegal discharge while still achieving its purpose of terminating the employee by making an offer it knows will not be accepted. Additionally, an employer may have a desire to keep up public appearances by leading others to believe that it has not fired an individual who is a member of a group protected by federal antidiscrimination laws. By making an "offer" of re-employment it knows will not be accepted, an employer can assert, as Dillard does in this case, that the employee simply "quit."

employment action. This inquiry, unlike constructive discharge, involves no analysis of whether the employment conditions were so intolerable as to compel a reasonable person to resign, but it does prevent employees from merely asserting that they were discharged where the evidence shows that they quit after a demotion.

The case law makes clear that the inquiry as to whether actual termination has occurred involves analysis of the employer's intent. *See Payne v. Crane Co.,* 560 F.2d 198, 199 (5th Cir.1977) (finding that a termination occurs for purposes of the statute of limitations under the ADEA when an employer "by acts or words, shows a clear intention to dispense with the services of an employee")[4]; *see also Whatley v. Skaggs Cos., Inc.,* 707 F.2d 1129, 1133 n. 3, 1137-38 (10th Cir.1983) (relying on employer's own description of job action in finding that actual termination occurred). The decisional law also establishes that the issue of whether an actual termination has occurred is determined in light of the particular circumstances of the controverted job action. *See, e.g., Schneider v. Jax Shack, Inc.,* 794 F.2d 383, 385 (8th Cir.1986) (explaining that in determining whether actual discharge has occurred, "the realities of the employee's situation, as well as the employer's label for its job action, should be taken into account"); *see also Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 88 (2d Cir.1996) ("An actual discharge ... occurs when the employer uses language or engages in conduct that "would logically lead a prudent person to believe his tenure has been terminated'."); *EEOC v. Service News Co.,* 898 F.2d 958, 962 (4th Cir.1990) ("No specific words need be present to support a finding of actual discharge.").[5]

---

[4]Although *Payne* was not directly on point in that it involved analysis of when termination occurred for purposes of the statute of limitations, we find that it stands for the general proposition that an employer's conduct manifesting a clear intention to dispense with an employee's services is relevant to the inquiry as to when actual termination has occurred under the ADEA. Additionally, in subsequent cases we have placed emphasis on the employer's intent in explaining that the actual *decision* to terminate, and giving notice to the employee of that decision, are the relevant illegal acts under the ADEA. *E.g., Calhoun v. Federal Nat. Mortg. Ass'n,* 823 F.2d 451, 456 (11th Cir.1987) ("The fact of termination is not itself an illegal act. The alleged illegal acts here were the decision to terminate and the notice of the decision to [the employee]."); *see also Cocke v. Merrill Lynch & Co., Inc.,* 817 F.2d 1559, 1561 (11th Cir.1987) (same).

[5]Appellee suggests that *EEOC v. Service News Co.,* 898 F.2d 958, 962 (4th Cir.1990) is distinguishable because it did not involve an offer of an alternative position. However, we find that case to be instructive as to the general proposition that no specific words are necessary for

Moreover, we note that several other courts have relied on analysis of the specific facts of each case in concluding that an actual termination occurred even where the employer made an offer of an alternative position. In *Whatley v. Skaggs Cos., Inc.,* 707 F.2d at 1133 n. 3, 1137-38, a Title VII national origin discrimination case, the Tenth Circuit addressed the issue of whether an actual termination occurred where the plaintiff was told that "he was no longer a lobby manager," *id.* at 1133, and was transferred to a lower-ranking position after pleading with his superior, *id.* at 1133, 1138. For purposes of determining whether the back pay awarded by the trial court was appropriate, the court held that the plaintiff had actually been terminated rather than merely demoted. *Id.* at 1133 n. 3, 1137-38. The court emphasized that there was testimony by plaintiff's superiors revealing that they had intended to terminate him. *Id.*

In *Schneider v. Jax Shack, Inc.,* 794 F.2d at 384-85, the Eighth Circuit considered whether there was an actual termination where the plaintiff, after informing her employer she was pregnant, was removed from her position as a bartender and was offered a part-time position as a cocktail waitress, which she declined. *Id.* at 384. The court held that the plaintiff had sufficiently demonstrated that there was an "actual discharge" for purposes of establishing a prima facie case of pregnancy discrimination under Title VII. *Id.* at 384-85. The court focused on the "realities" of the plaintiff's situation, noting that she had received only a "vague offer" of alternative employment and that "the Jax Shack was not committed to employing her."[6] *Id.*

In *Miller v. Butcher Distributors,* 89 F.3d 265, 267 (5th Cir.1996), an age discrimination case

---

an actual termination to have occurred, and that the proper inquiry involves analysis of all the circumstances. In *Service News,* a pregnancy discrimination case under Title VII, the plaintiff alleged that she had been discharged as a result of a meeting with her employer in which he did not explicitly tell her she was terminated but repeatedly expressed concern that she would be injured if she continued to work while pregnant and recounted other instances where pregnant employees had problems on the job. *Id.* at 960. The employer argued that the plaintiff had been constructively discharged rather than actually terminated. *Id.* at 962. The Fourth Circuit held that "actual discharge rather than constructive discharge was appropriate to this case." *Id.*

[6]We note that Dillard attempts to draw factual distinctions between the instant case and *Schneider* and *Whatley.* However, we do not rely on those cases for exact factual analogies to the present one. Rather, we cite those cases for the proposition that an offer of alternative employment does not foreclose as a matter of law the fact-intensive inquiry as to whether plaintiff was actually terminated.

under the ADEA, the Fifth Circuit rejected the defendant employer's argument that no actual termination had occurred where plaintiff was separated from her employment after her boss told her, "It's either part time, or you're out of here", 89 F.3d at 267. The court analyzed the issue as follows:

> [Defendant] for the first time now argues, somewhat inanely, that Miller was not actually terminated from employment. Instead, the defendant contends that Miller was offered a part-time position which she refused. Thus, [defendant] asserts that Miller voluntarily resigned.... The evidence presented at trial allowed the jury to conclude that Miller was terminated....

*Id.* at 267. Appellee contends that the *Miller* court rejected the defendant's argument simply because it was raised for the first time on appeal. While that may have been a factor in the court's analysis, it is obvious that the court did not agree with the substance of appellee's argument and that the court found that the evidence was sufficient to support a finding of termination.[7] *See id.*

We agree that an offer of an alternative position does not automatically preclude an inquiry as to whether a plaintiff was actually terminated. Rather, the "actual termination" inquiry must be undertaken with close scrutiny of the evidence in each case.

Turning to the specific facts before us, after a thorough review of the record and the briefs, we find that reasonable minds might differ as to whether Thomas was actually terminated in this case. The evidence at trial reflected the following. Sue E. Thomas was born on June 29, 1932, and was 63 years old at the time of trial. She began working full-time for J.B. Ivey's & Co. in May 1972. In 1988, Thomas became the Area Sales Manager (ASM) of Lingerie for Ivey's in Jacksonville, Florida. From 1988 until June of 1990, Thomas remained in the position of ASM. In June 1990 Dillard Department Stores, Inc. acquired Ivey's and Thomas continued her employment as an employee of Dillard. In February of 1991, Chris Warner became the Store Manager of the Dillard Regency Square Store, where Thomas was employed at all times material to this case. At that time, Warner was approximately 30 years old.

---

[7]Appellee suggests that the court found that there was sufficient evidence only for a finding of constructive discharge because the court noted that "[c]learly, Miller was at the very least constructively terminated", *Miller,* 89 F.3d at 267. However, we find that this statement regarding constructive discharge did not undermine the clear import of other language in the opinion rejecting defendant's argument that Miller was not "actually terminated." *Id.* at 267. As appellee admits, the court "decided the case as if there were an actual termination."

On March 12, 1993, Thomas had a meeting with Warner. Thomas testified that when she was seated in Warner's office, he told her, "Sue, we've got a problem. You can no longer be an Area Sales Manager in this store." At that point, Warner stopped speaking, so Thomas asked him, "Excuse me?" In response, Warner repeated, "You can no longer be an Area Sales Manager in this store." Thomas then allegedly asked Warner, "Why me?" Warner replied, "You did not make your sales plan for 1992."[8] Thomas then began crying. Thomas testified that she believed that Warner's words and actions meant that she no longer had a job at Dillard. Thomas then asked Warner, "What in the world am I supposed to do?" Warner replied, "Figures talk."

When Thomas again asked, "What in the world am I going to do?" Warner allegedly stated, "Well I don't really have anything, but I could put you in Accessories."[9] Warner testified that he remembered telling Thomas that he did not really have an opening. However, Warner also testified that he told Thomas that he had "arranged" for her to take a sales associate position at either the Regency Square store or the "Avenues Store". During trial, Warner admitted that at the time he offered a position to Thomas, he was not certain if a position in Accessories existed at the Regency Store and that he "was not sure what position there was" at the Avenues Store. However, he also testified that a position "would have been made available for her [there]."

Thomas testified that Warner did not ask her to make an immediate decision about the offer of an alternative position. Instead he instructed her to go to her office, get her keys and purse, and go home. Warner testified that he told Thomas to "go home, and let me know what you would like to do on Monday." Thomas stated that at the conclusion of this March 12, 1993 meeting, she had no doubt that she had been terminated. However, Thomas admitted on the stand—after impeachment with her deposition testimony—that Warner had given her an offer of an alternative position at the March 12 meeting. Thomas explained that she did not consider this a genuine "offer" because it was "pull[ed] out of Mr. Warner's mouth" by her repeated pleas. On direct examination,

---

[8]Appellee concedes that "it is true that all ASMs at the Regency Square failed to make sales plan (i.e. their sales goal) for fiscal year 1992."

[9]The position in Accessories was a sales associate position.

however, she used the label "offer" in referring to the relevant event.

Ten days later, on March 22, Thomas returned to the store in order to give Warner her charge card, the keys to the store, and her security pass. She also told Warner at that time that she could not accept his offer of employment at a lesser position. Warner's notes concerning his March 22, 1993 conversation with Thomas reflect the following events:

> "Sue came in [and] said that she wouldn't be working here further. She said she would not sign separation until she knew about her 401(k) and vacation; said that she didn't appreciate that she was let go and that she felt that she was being treated unfairly. She also didn't appreciate the gossip. She gave me her credit card, keys, and security code card."[10]

Evidence was also produced that Warner was telling other employees at the Regency Square Dillard's store, immediately after his March 12, 1993 meeting with Thomas, that Thomas was no longer with the Company. At trial, Darryl McCoy, the current Operations Manager at the Regency Square Dillard, testified that immediately after Mr. Warner met with Thomas, he let McCoy know that Thomas was "no longer with the Company." Though McCoy was unable to specify the date on which he was informed that Thomas was "no longer with the Company," a reasonable juror might have inferred that the meeting to which McCoy was referring was the one that occurred on March 12, 1993. In fact, had the court admitted the proffered testimony of Katherine Vanscyoc, which it should have because it was simply proffered to establish the time of utterance and was, therefore, not hearsay, it would have established that McCoy told her on March 14, 1993, "around 3 o'clock," that Thomas was "no longer with the Company."

In light of all this evidence, we find that reasonable minds could conclude that Warner's statements that Thomas "can no longer be an Area Sales Manager in this store" and instructing her to go home constituted termination under the circumstances. Thomas testified that after Mr. Warner told her she was removed from her position, he behaved as though the conversation were finished on several different occasions before telling Thomas, "[w]ell, I don't really have anything, but I

---

[10]During trial Warner testified that he called Thomas back on the afternoon of March 22, 1993, and re-extended an offer of alternative employment. Warner was impeached on this point, however, because in his deposition he said that he had never re-extended the offer to Thomas after March 12, 1993. Likewise, Thomas testified that there was no offer of re-employment on March 22, 1993.

could put you in Accessories." Warner thereafter told the manager that she had been fired. Thus, the jury could reasonably have concluded that Warner actually terminated Thomas and made only a reluctant and insincere offer of re-employment.

Appellee contends that there was no actual termination because Thomas was never told that she was fired. Appellee quotes the district court's findings that "[a]t the meeting on March 12, the Plaintiff was not told that she was terminated. She was not told that she was fired. She was not told that she could no longer work for the Defendant. Rather, she was told that she could no longer continue her job as an area sales manager." While the words used by the employer and the label for the job action are relevant for determining whether a termination has occurred, *Chertkova,* 92 F.3d at 88; *Schneider,* 794 F.2d at 385, it is also clear in light of the case law that the lack of specific words is not dispositive, *see, e.g., Chertkova,* 92 F.3d at 88; *Service News,* 898 F.2d at 962. Thus, to the extent that the district court determined that the employer's words were dispositive—which was implicit in the court's statement that Thomas could not prevail because there was no "express termination"—that analysis was incorrect. The proper legal standard requires analysis of the employer's intent, which may be inferred not only from words but also from conduct, as well as the specific circumstances of the challenged job action. Applying the proper standard to the facts of this case, we find that Thomas presented sufficient evidence to raise a jury question as to whether she was actually terminated.

III. CONCLUSION

After considering all the evidence, we conclude that reasonable jurors in the exercise of impartial judgment might reach different conclusions as to whether Thomas was actually terminated. Accordingly, we reverse the district court's order granting judgment as a matter of law and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

PROPST, District Judge, concurring:

I concur in the result. I do so solely on the basis that a question of fact exists as to whether the defendant's offer of sales associate position(s) was a bona fide offer. Among the matters that the

jury will have to consider in this regard will be the availability of such position(s) or the intent of the employer to create and fill the position(s) on a reasonably permanent basis, the meaning and significance of the statements allegedly made by Warner to other employees after the March 12, 1993 meeting, etc. I would not attach as much significance as the majority opinion does to the subjective opinions of the plaintiff or to whether the offer was reluctant one. I further would not suggest that the plaintiff can recover on an "actual" termination claim merely by showing that the employer had made "an offer it knows will not be accepted." This unnecessarily blurs the distinction between an "actual" discharge and a "constructive" discharge analysis.[1] As long as the offer is in fact an offer, the employer's speculation or belief as to the employee's reaction to the offer should not affect the legitimacy of the offer or relieve the employee of proving a "constructive" discharge in order to prevail. I also do not agree with the statement in the majority opinion that "[We] find that reasonable minds could conclude that Warner's statements that Thomas "can no longer be an Area Sales Manager in this store' and instructing her to go home constituted termination under the circumstances." I would not so emphasize this isolated evidence.

---

[1]*See* majority opinion *supra* at note 3.