Lorna G. MADDIN, Plaintiff,

v.

GTE OF FLORIDA, INC., Defendant.

No. 97–1648–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 27, 1999.

James David Acosta, Acosta & Rose, P.A., Tampa, FL, for plaintiff.

Gregory Alan Hearing, Thomas M. Gonzalez, Richard L. Bradford, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant, GTE OF FLORIDA, INC. [GTE]'s, motion for summary judgment and supporting memorandum (Docket Nos. 11–12), filed October 1, 1998; and Plaintiff, LORNA G. MADDIN [Maddin]'s, response (Docket No. 16), filed October 13, 1998.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Evans v. Meadow Steel Products, Inc., 579 F.Supp. 1391, 1394 (N.D.Ga.1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Liberty Lobby, Inc., 477 U.S. at 249, 106 S.Ct. 2505. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. See Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir.1989) (citing Celotex, 477 U.S. at 324–25, 106 S.Ct. 2548).

## BACKGROUND

The facts as stated are taken from the complaint (Docket No. 1), filed July 1, 1997; Maddin's deposition (Docket No. 13), filed October 1, 1998; Maddin's affidavit (Docket No. 18), filed October 13, 1998; Bob Mathis'

affidavit (Docket No. 13), filed October 1, 1998; and Mathis' deposition, (Docket No. 15), filed October 8, 1998. Where there are conflicts in the evidence, they are resolved for purposes of this motion in favor of Maddin as the non-moving party.

Maddin began her employment with GTE in 1983 and worked in several different positions with GTE, becoming a customer service representative in 1988. The problems alleged in her complaint began in 1995, at which time she worked in GTE's Customer Contact Center in Tampa, Florida. There, customer service representatives answer calls regarding billing and payment from customers from across the southeastern United States. The representatives are broken up into groups, and each group has a supervisor. In 1995, Maddin was in a group of approximately twenty associates supervised by Joe Miller. Sarah Legault later became her supervisor. Throughout the time in question, Maddin's supervisor reported to a section manager, Bob Mathis, who oversaw nine supervisors.

Between March and October 1995, Maddin had ongoing medical problems relating to a pregnancy and miscarriage. As a result of these problems, Maddin took leave several times under the Family and Medical Leave Act of 1993 [FMLA], 29 U.S.C. § 2601. Maddin alleges that Miller was not properly trained in filling out FMLA paperwork, and that several times he lost the paperwork she filled out. Miller called her at home while she was recovering from a miscarriage and asked her to fill out additional paperwork. As a result of Miller's problems with the paperwork, Maddin was initially recorded as being absent rather than on leave for the time she missed. Maddin was not credited with all of her FMLA leave until January 1996. GTE limits the number of unscheduled absences employees may have, but does not count FMLA leave as an unscheduled absence. Miller's mistake meant that Maddin was prevented from being considered for several transfers she applied for, because her absenteeism rate was too high. Further, she was threatened several times with losing her job if she missed any more work. In August 1995, Maddin had a meet-ing with Miller and Mathis at which she was required to answer detailed and embarrassing questions about her medical condition.

Maddin also alleges that during this time Mathis addressed her by such terms as "gorgeous," "babe," "doll," "good-looking," "honey," "sweety," and "beautiful." He played with her hair while she was talking to a customer. On one occasion he told her "You know, in another life you and I would have been lovers." She also alleges that her work was subject to greater scrutiny than the work of other associates. Finally, Maddin states that Mathis oversaw a meeting of her work group that became quite argumentative and hostile. During that meeting, Mathis put his hand over her face, touching her face, and told her to "shut up."

GTE has a progressive discipline system. An infraction of GTE's rules or policies is first met with a verbal warning, followed by a worksheet, an on-job contact, a written reminder, and finally a decision-making leave. An employee who violates GTE's rules or policies following a decision-making leave would ordinarily be terminated. After having already gone through the earlier steps in GTE's progressive discipline system, Maddin was placed on a one-day decision-making leave on June 27, 1996 for tardiness in returning from breaks, rudeness to customers, and placing customers on hold for excessive lengths of time.

On August 4, 1996, Maddin took a leave of absence pursuant to the FMLA. She was scheduled to return to her job on October 20, 1996, but never returned. GTE attempted to contact Maddin on October 18, 1996 and October 21, 1996, but she did not return the calls. On October 31, 1996, GTE sent Maddin a letter informing her that her employment with GTE was terminated for job abandonment. Although Maddin received this letter, she did not understand from it that her employment with GTE was actually terminated, because at the time, her doctors and the union were attempting to have her placed in a different position. Through her union, Maddin filed a grievance over her termination, but the grievance was eventually dropped by the union.

GTE provided sexual harassment training to its employees and supervisors. Additionally, throughout the time in question, GTE had a policy against sexual harassment. The policy was posted on employee bulletin boards on every floor of GTE's Customer Contact Center. Victims of sexual harassment were told that they should report the harassment to their supervisor, the Human Resources Department, Security, or the GTE Business Conduct Concerns Line. Nonetheless, Maddin did not take advantage of any of these options. Instead, she told her union steward, a fellow customer service representative, what had happened. She did not, however, ever file a grievance over Mathis' actions, even though she filed at least eleven other grievances between 1994 and 1996.

Maddin filed a charge of employment discrimination with the Equal Employment Opportunity Commission. She received a right to sue letter on April 4, 1997, and filed this action on July 1, 1997. Maddin's complaint contains two counts. Count I is a claim for sex discrimination under 42 U.S.C. § 2000e [Title VII], alleging that Maddin received disparate treatment based on her sex and that she was subjected to a hostile and abusive working environment. Count II is a claim for battery under Florida law, alleging that Mathis acted within the scope and course of his employment when he placed his hand on her face during the May 24, 1996, meeting. GTE now moves for summary judgment as to both counts.

### ANALYSIS

### I. Count I

Title VII authorizes redress of sex-based employment discrimination under any of a number of theories. Maddin proceeds under several of these. Her complaint seeks remedies based on the theories of disparate treatment and sexual harassment. Maddin's response to GTE's motion for summary judgment also discusses recovery under a theory of constructive discharge.

### A. Disparate Treatment

■ Although her complaint is not entirely clear in this respect, Maddin's disparate treatment claim appears to be based on the handling of her FMLA leave. To establish a *prima facie* case of disparate treatment sex discrimination, a plaintiff must allege and prove that: (i) she is a member of a protected class; (ii) she suffered an adverse employment action; (iii) she and a similarly situated non-protected person were dissimilarly treated; and (iv) the employment action was causally related to her protected status. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

■ Maddin satisfies only the first two prongs of this test. As a woman, Maddin is a member of a protected class. *Henson v. City of Dundee,* 682 F.2d 897, 903 (11th Cir.1982). The failure to promote is an adverse employment action. *See, e.g., Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1543 (11th Cir.1988). However, Maddin provides no instances in which a male GTE employee was treated differently with regard to FMLA leave. Further, the only basis for associating the problems surrounding Maddin's FMLA leave to sex discrimination is that pregnancy and miscarriage are conditions unique to women, but in both Maddin's complaint and her deposition, she attributes the problems surrounding her FMLA leave to GTE's failure to train its supervisors in how to handle FMLA leave, and not to her sex. Thus, Maddin does not establish a *prima facie* case of disparate treatment sexual discrimination.

### B. Hostile Environment Sexual Harassment

Sexual harassment violates Title VII's proscription of discrimination based on sex. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (1989). Sexual harassment can take the form of *quid pro quo* harassment, in which the employer or an agent of the employer conditions changes in employment terms on demands for sexual favors. *See id.* It also can take the form of hostile work environment harassment, which occurs when the employer or agent's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Meritor Savings Bank v.*

*Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ Maddin claims that she was subjected to a hostile work environment. In order to establish a *prima facie* case of hostile work environment sexual harassment, Maddin must prove: (1) that she belongs to the protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a term, condition, or privilege of employment in that it was sufficiently severe or pervasive to alter conditions of her employment and create an abusive working environment. *See Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir. 1987).

GTE argues that the actions Maddin complains of were not sufficiently severe or pervasive as to affect a term or condition of Maddin's employment. In Its recent decision in *Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998), the Supreme Court reviewed its holdings with respect to this element of a hostile environment sexual harassment claim:

> [I]n *Harris* [*v. Forklift Systems*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ], we explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. 510 U.S., at 21–22, 114 S.Ct., at 370–371. We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*, at 23, 114 S.Ct., at 371. Most recently, we explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale*

[*v. Sundowner Offshore Services, Inc.*, 523 U.S. ——, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998)]. A recurring point in these opinions is that "simple teasing," *id.*, at ——, 118 S.Ct., at 1003, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."

These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." *Id.*, at ——, 118 S.Ct., at 1002. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. *See, e.g., Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577–578 (C.A.2 1989); *Moylan v. Maries County*, 792 F.2d 746, 749–750 (C.A.8 1986); See also 1 Lindemann & Grossman 805–807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

*Faragher*, 524 U.S. at ———— ————, 118 S.Ct. at 2283–84. It is against this standard that the Court must measure whether the harassment faced by Maddin was sufficiently severe or pervasive to alter the conditions of her employment.

■ The Court's task is needlessly complicated by the fact that Count I of Maddin's complaint makes claims for both disparate treatment sexual discrimination and hostile environment sexual harassment, and fails to delineate which allegations relate to which claim. Although it is not entirely clear that all of the allegations in Count I describe harassment based on Maddin's sex, the Court will assume for purposes of this motion that they do. The Court is thus left with the question of whether the following actions,

taken together, created a work environment that was sufficiently hostile as to change the terms and conditions of Maddin's employment: failing to properly handle Maddin's FMLA paperwork; requiring Maddin to answer intrusive questions about her medical condition; repeatedly addressing Maddin with the terms "gorgeous," "babe," "doll," "good-looking," "honey," "sweety," and "beautiful;" playing with Maddin's hair; stating to her, "You know, in another life you and I would have been lovers;" reviewing Maddin's work more closely than the work of other employees; and Mathis' placing his hand over Maddin's face and telling her to "shut up." Even assuming for the sake of argument that all of these actions are related to Maddin's sex, they do not rise to the level of severe or pervasive harassment the Supreme Court has stated is necessary to implicate Title VII. Instead, consistent with the Supreme Court's warning that only the most severe or pervasive sexual harassment would create a change in the terms or conditions of employment, federal courts have found that allegations of conduct similar in kind and context to the conduct alleged by Maddin do not establish a *prima facie* case under Title VII. *See, e.g., Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir.1995); *Saxton v. AT & T Co.*, 10 F.3d 526 (7th Cir.1993); *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333 (7th Cir.1993); *Fiscus v. Triumph Group Operations, Inc.*, 24 F.Supp.2d 1229 (D.Kansas 1998); *Caro v. City of Dallas*, 17 F.Supp.2d 618 (N.D.Tex. 1998).

■ Moreover, even if the conduct Maddin alleged were sufficient to state a *prima facie* case under Title VII, the affirmative defense to employer liability under Title VII that applies here. In *Faragher*, the Supreme Court stated that if no "tangible employment action," such as "discharge, demotion, or undesirable reassignment" was taken against the complaining employee:

> a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed.Rule.Civ.Proc. 8(c). The defense comprises two necessary elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

524 U.S. at ——, 118 S.Ct. at 2293. While a constructive discharge can constitute a tangible employment action, *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 n. 2 (11th Cir.1997), that does not preclude GTE from asserting this defense, because, as discussed below, Maddin was not constructively discharged.

Maddin does not dispute that GTE met the first requirement of this defense beyond making the conclusory statement that "there is no evidence that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." To the contrary, unrebutted evidence shows that GTE's sexual harassment policy was reasonable to prevent and correct sexual harassment. GTE provided training about sexual harassment for its employees and supervisors. GTE's sexual harassment policy made it clear that sexual harassment would not be tolerated and provided a number of avenues through which sexual harassment could be reported. GTE posted the policy on employee bulletin boards on every floor of the building in which Maddin worked.

The evidence also shows that the second element of this affirmative defense was met. Although GTE's posted sexual harassment policy provided employees that were being harassed with a number of entities to which the employee could complain, Maddin notified none of them of the harassment now alleged. The Supreme Court noted in *Faragher* that "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." 524 U.S. at ——, 118 S.Ct. at 2293. Maddin argues that the sexual harassment policy was unclear and that she thought a

complaint to her union steward, a fellow customer representative, was sufficient to notify GTE of the harassment. However, the sexual harassment policy clearly lists a number of different entities to which a complaint of sexual harassment could be made. The union was not one of them. Further, the union did not actually notify GTE of Maddin's allegations of harassment. Thus, even if it could be said that Maddin's work environment was characterized by pervasive or severe sexual harassment, GTE can assert this affirmative defense against Maddin's hostile work environment claim.

### C. Constructive Discharge

■ Although Maddin's complaint does not make a claim for constructive discharge, constructive discharge was raised by both sides at the summary judgment stage. To the extent that Maddin intends to make a claim for constructive discharge under Title VII, she does not establish a *prima facie* case for that claim. "[W]hen an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected to because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge in violation of Title VII." *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993) (quoting *Henson v. City of Dundee,* 682 F.2d 897, 907 (11th Cir.1982)). To demonstrate constructive discharge, Maddin "must demonstrate that 'working conditions were so intolerable that a reasonable person in her position would be compelled to resign.'" *Poole,* 129 F.3d at 553 (quoting *Thomas v. Dillard Department Stores, Inc.,* 116 F.3d 1432, 1433–34 (11th Cir.1997)). The facts in evidence do not support such a claim. "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minium required to prove a hostile working environment." *Landgraf v. USI Film Products,* 968 F.2d 427, 430 (5th Cir.1992). Maddin has not established even that the harassment was severe or pervasive enough to constitute a hostile working environment; *a fortiori,* she has not shown that her working conditions were so intolerable that she was forced to resign.

Because the evidence presents no material fact disputes with regard to any of the possible causes of action under Title VII, summary judgment will be granted as to Count I.

### II. Count II

■ Count II is a claim for battery under Florida state law; it presents no federal question. Diversity of citizenship is not present between the parties to this action. There is no independent basis for original federal jurisdiction. Therefore, since the federal claim has been dismissed, pursuant to 28 U.S.C. 1367(c)(3), this Court dismisses this pendant state law claim. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352 (11th Cir.1997). Accordingly, it is

**ORDERED** that Defendant GTE OF FLORIDA, INC.'s motion for summary judgment (Docket No. 11) be **GRANTED** as to Count I; judgment be entered for the Defendant on Count I; and that Count II be **DISMISSED.**