**Darlene CROMER, Plaintiff,**

v.

**Robert CROWDER as Sheriff of Martin County, Florida, William Snyder, Sanford "Grady" Shirk and Edwin E. Kirkpatrick, Defendants.**

No. 01–14368–CIV.

United States District Court,
S.D. Florida,
Fort Pierce Division.

July 17, 2003.

Isidro Manuel Garcia, Esq., Garcia Elkins & Boehringer, West Palm Beach, for Plaintiff.

Keith C. Tischler, Esq., Robert Wayne Gordon Evans, Esq., Powers Quaschnick Tischler & Evans, Tallahassee, for Defendant.

### *ORDER GRANTING SUMMARY JUDGMENT*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (DE # 76).

UPON CONSIDERATION of the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order granting Defendants' motion.

### BACKGROUND

Plaintiff Darlene Cromer brought this action against Defendants Robert Crowder, William Snyder, Sanford "Grady" Shirk and Edwin E. Kirkpatrick for allegedly violating Cromer's property and liberty interests and her right to equal protection as guaranteed by the Fourteenth Amendment and actionable under 42 U.S.C. § 1983. Cromer also alleges that Defendants conspired to deprive her of equal protection under the Fourteenth Amendment because of her gender and in retaliation for complaining about sex discrimination, in violation of 42 U.S.C. § 1985.

The Sheriff's Office of Martin County, Florida (the "Sheriff's Office") employed Cromer as a fingerprint identification technician and officer from September 1986 until September 1, 2000, when she resigned. Crowder is the Sheriff of Martin County and is being sued in his official capacity. The Sheriff's Office also employed Snyder, Shirk and Kirkpatrick, all of whom held supervisory authority over Cromer.

## DISCUSSION

### Summary Judgment Standard

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. Summary judgment may be granted if the nonmovant fails to adduce evidence which, when viewed in a light most favorable to him, would support a jury finding in his favor. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

### Count I42 U.S.C. § 1983–Liberty and Property Interest Violation

█ Cromer alleges that Defendants placed or caused to be placed in her personnel file a memorandum containing false and stigmatizing information without the opportunity for a name-clearing hearing. As a result, Cromer asserts, she lost employment opportunities in the field of law enforcement. To recover under § 1983 for a procedural due process claim for depri-

vation of liberty, Cromer must "show that '(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4)[was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing.'" *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir.2000) (alteration in original) (quoting *Warren v. Crawford*, 927 F.2d 559, 565 (11th Cir.1991)). Importantly, this claim is actionable only where the state refuses to provide a process sufficient to remedy the procedural deprivation. *Id.* at 1330–31. Thus, a procedural due process violation does not exist where adequate state remedies are available.

█ The primary issue in controversy here is whether an adequate state remedy existed. Florida law recognizes a right of certiorari for public employees who are adversely affected by an employer's personnel action. As discussed in detail in this Court's December 13, 2002 Order (DE # 37) granting in part Defendants' motion to dismiss, Defendants' alleged act of placing false and disparaging information in Cromer's personnel file is not an executive act. Rather, the Sheriff's decision-making in this case is judicial or quasi-judicial in nature and is therefore subject to certiorari review. Because certiorari review is available, Cromer cannot maintain her procedural due process claim for deprivation of liberty under § 1983. *Id.*[1]

### Count II42 U.S.C. § 1983–Equal Protection Violation

Cromer claims that Defendants, acting under state law, violated her Fourteenth Amendment right to equal protection by: paying her less than Jerome Wallenquest, a similarly situated male employee; assigning to her unfavorable assignments, benefits and working hours; creating a hostile work environment due to her gender; and constructively discharging her.

█ To prevail on a § 1983 claim, Cromer must demonstrate that: (1) Defendants deprived her of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir.1998).

### *Unequal Pay & Unfavorable Assignments*

█ In order to establish a violation of the Equal Protection Clause, Cromer must prove discriminatory motive or purpose behind the alleged discriminatory conduct. *Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995). The elements and analysis for a § 1983 claim and a Title VII claim under these circumstances are the same. *Id.* at 1507–08; *see also Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 n. 4 (11th Cir.1998). In analyzing a gender based wage discrimination claim, the Court follows the *McDonnell Douglas* disparate treatment analysis test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* three-part test is used to determine a defendant's motivation for taking the challenged action. Under *McDonnell Douglas*, the Plaintiff must set forth each element of a *prima facie* case before the burden of production shifts to the defendants to articulate some legitimate, non-discriminatory reason for the termination of Plaintiff's employment. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). The inference of discrimination created by the *prima facie* case then disappears, leaving the plaintiff to prove that

---

1. The Court refers to its December 13, 2002 Order (DE # 37) for further discussion of Cromer's adequate state law remedies.

"'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ Cromer asserts that she was paid less than Wallenquest, the only employee who worked with Cromer in the identification division of the Sheriff's Office. Defendants, however, have established legitimate, non-discriminatory reasons for paying Cromer less than Wallenquest. It is uncontested that Wallenquest possessed substantially more experience—at least ten more years—than Cromer in the field of police identification and evidence. "Treating unequals equally can be unfair .... We know of no appellate decision on the Equal Protection clause that holds that the length and nature of experience in government service cannot be relied upon in fixing the pay of employees doing similar work." *Bates v. Hunt*, 3 F.3d 374, 379 (11th Cir.1993). The fact that Cromer may have refreshed Wallenquest in the "Henry" fingerprinting system, one aspect of the job, upon his arrival at the Sheriff's Office, does not disturb the fact that Wallenquest possessed substantially more overall experience than Cromer in the identification and evidence field.

■ Moreover, Cromer's allegations of preferential treatment regarding training, work hours, clothing and use of the identification division's vehicle are unsupported by the record to the extent that the alleged conduct represents any discrimination. It is undisputed that the Sheriff's Office: offered substantial training to Cromer; directed all employees, including Wallenquest and Cromer, to be present for work at specific hours; remedied Cromer's complaints about required dress after she was promoted to officer; and provided Cromer an equal opportunity with Wallenquest to use the vehicle assigned to their unit. While Cromer's affidavit alleges several training opportunities that Defendants denied, the only training incident that Cromer testified about in depth at her deposition, and the only incident Defendants have been questioned about in detail, stems from Snyder's refusal of Cromer's request for out-of-state training. Snyder's denial was legitimately and pragmatically based upon the fact that Cromer was assigned to only limited duty at the Sheriff's Office at the time, resulting in the questionable use of resources for an employee on limited and restricted duty to attend a costly training conference.

■ Once a defendant offers a legitimate, non-discriminatory reason for its action, the plaintiff must attack that reason "head on and rebut it" so as to show that the proffered reason is really pretext for retaliation. *Chapman v. Al Transport*, 229 F.3d at 1030. The obligation of the plaintiff is to offer evidence that calls into question the purported non-discriminatory reasons showing that those "legitimate reasons were not what actually motivated its conduct." *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir.1994). Cromer has failed to raise "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" regarding the proffered legitimate, non-discriminatory reason for Defendants' decision to pay Cromer less money than Wallenquest and any alleged unequal working conditions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997). Cromer has failed to present the Court with any direct or circumstantial evidence sufficient to raise a genuine issue of material fact that the reasons offered by Defendants for her unequal pay and perceived unequal working conditions were pretextual. To the contrary, the parties' voluminous filings of

deposition transcripts [2] demonstrate an environment lacking in sexual harassment or discrimination in the Sheriff's Office, both generally and towards Cromer. Even after extensive discovery via depositions, the only nugget of possible sex discrimination comes from the testimony of Rebecca Bagley, a deputy in the Sheriff's Office. Bagley filed a discrimination claim with the EEOC that she and the Sheriff's Office promptly resolved approximately ten years ago to the satisfaction of Bagley, who testified that she suffered no reprisals for the claim. The incident fails to save Cromer's equal protection claims.

### Hostile Work Environment

■■■■ In order to establish a *prima facie* case of hostile work environment, Cromer must establish that: (1) she is part of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) a basis exists for holding Defendants liable or that Crowder knew or should have known of the harassment and failed to take remedial action. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc). Whether the conduct is sufficiently severe and pervasive from an objective standpoint is the lynchpin of the *Mendoza* criterion and helps test the legitimacy of most harassment claims. *Gupta v. Fla. Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). This element is weighed through a determination of four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza*, 195 F.3d at 1246.

■■■■ Cromer fails to set forth specific instances of harassment that is objectively severe or pervasive in the context of her allegations, as required by *Mendoza*. Cromer alleges that she was sexually harassed because her supervisor, Snyder, did not greet her while passing her in the hallway while he did so to others, did not wish her happy birthday, did not call her at home when she was sick and generally "didn't like" Cromer. As for any allegations of unequal pay and unfavorable assignments contributing to a hostile work environment, such allegations are effectively dispatched by the discussion above regarding those claims. At best, Cromer's allegations, if true, amount to what can be described as an unprofessional work environment, but does not approach a hostile one.

### Constructive Discharge

■■■■ To establish a claim for constructive discharge, Cromer "must demonstrate that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989). Because the conditions complained of do not establish a hostile work environment claim, Cromer's action for constructive discharge also fails. *Maddin v. GTE of Fla., Inc.*, 33 F.Supp.2d 1027, 1033 (M.D.Fla.1999) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.")). Cromer "has not established

---

2. Several of the transcripts submitted by both parties contain missing pages of testimony. Nonetheless, the record contains more than

sufficient evidence to grant summary judgment to Defendants.

even that the harassment was severe or pervasive enough to constitute a hostile working environment; *a fortiori*, she has not shown that her working conditions were so intolerable that she was forced to resign." *Id.*

Based upon the foregoing, Defendants are entitled to summary judgment as a matter of law on Cromer's § 1983 equal protection claims.

### Count III-Conspiracy/Retaliation42 U.S.C. § 1985

 Cromer finally alleges, pursuant to 42 U.S.C. § 1985(3), that Defendants conspired to retaliated against her for complaining of sex discrimination. To prevail on this claim, Cromer must prove the existence of:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. More specifically, the second element requires a showing of ... class-based, invidiously discriminatory animus behind the conspirators' action.

*Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627–28 (11th Cir.1992) (internal quotations and citations omitted). Although the Court granted Cromer leave to amend this particular claim, and she added a simple allegation of "conspiracy" among Defendants, she has failed to present any evidence of this conspiracy or any act in furtherance of a conspiracy. It is undisputed that Defendants took no retaliatory actions against Cromer: she requested a promotion to officer and the benefits accompanying the position, and received it; she did not use the car assigned to her unit because she found the arrangement—the same arrangement to which Wallenquest was subject—"inconvenient"; and, finally, she requested pay comparable to Wallenquest's replacement, and the Sheriff's Office responded, albeit with a slight delay due to a clerical mistake, by eventually granting the pay raise, including making the raise retroactive. Moreover, as discussed above, the record does not yield any evidence that Defendants concerted to undertake, nor actually took, any discriminatory action. Thus, her conspiracy claim fails.

### CONCLUSION

Based upon the foregoing, it is ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (DE # 76) is GRANTED. The Clerk of Court is direct to CLOSE this case. All pending motions not otherwise ruled upon are DENIED AS MOOT.